UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATRICK ANDREW WITTE, <br><br> Plaintiff, <br><br> v. <br><br> GENERAL NUTRITION CORPORATION and GNC PARENT, LLC, <br><br> Defendants. | Civil Action No. 15-0344 (ESH) |

## MEMORANDUM OPINION

Plaintiff Patrick Andrew Witte brings this action against defendants General Nutrition Company and GNC Parent, LLC, alleging that defendants engaged in an unlawful trade practice in violation of the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), D.C. Code § 28-3904 *et seq.*, by selling several of their products with nonfunctional slack-fill. Defendants removed the case to federal court, and now before this Court is plaintiff's motion to remand [ECF No. 14]. For the reasons stated herein, plaintiff's motion will be granted and the case will be remanded.

## BACKGROUND

Plaintiff, a D.C. resident, filed suit on February 6, 2015, in the Superior Court of the District of Columbia. (Complaint [ECF No. 1-2] ("Compl.") ¶ 4.) Defendants are Pennsylvania companies that "manufacture[], produce[], package[], and sell[] dietary supplements," with stores in the District of Columbia. (*Id.* ¶¶ 5-6, 8.) Plaintiff purchased two items – GNC Pro Performance 100% Whey Protein and GNC Beyond Raw Re-Size – from one of defendants' retail stores on December 16, 2014. (*Id.* ¶ 20.) The products' containers were "completely opaque" and "unable to be opened and inspected prior to purchase." (*Id.* ¶ 21-22.) When

plaintiff did open the containers, he found that they contained several inches of "non-functional slack-fill." (*Id.* ¶ 26.) Plaintiff describes "slack-fill" as "the area of empty space in a consumer bottle or packaging." (*Id.* ¶ 14; *see also* 21 C.F.R. § 100.100(a) ("Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.").) Plaintiff alleges that "non-functional slack-fill . . . is an unlawful and deceptive trade practice pursuant to DC Code § 28-3904." (*Id.* ¶ 38.) His suit, which he brings "on behalf of himself as an individual and on behalf of the general public," requests "[a]n injunction against GNC, including that GNC be barred from producing, manufacturing and packaging its propriety products with non-functional slack-fill in the District of Columbia." (*Id.* ¶¶ 37, 43.) He also requests "[a]dditional relief to restore to the consumer money which was acquired by means of the unlawful trade practice in the District of Columbia," punitive damages, attorney's fees, and "[a]ny other statutory relief the court determines proper under D.C. Code § 28-3905(k)(1)." (*Id.* ¶ 43.)

On March 10, 2015, Defendants filed a notice of removal. (Notice of Removal, [ECF No. 1] ("Notice").) With respect to the amount in controversy, defendants argued that "[p]laintiff has alleged an undefined number of violations, which could, unto themselves, exceed the sum of $75,000." (*Id.* ¶ 10 (citation omitted).) Defendants also contend that "the value of injunctive relief sought by Plaintiff would cost the Defendants more than $75,000." (*Id.*) In support of this latter proposition, defendants submitted an affidavit from a "Senior Litigation Paralegal" who has "worked for General Nutrition Corporation for five . . . years." (Aff. of Kevin C. Macken [ECF No. 1-5] ¶ 1.) That affidavit only asserts that "[t]he injunctive relief sought by Plaintiff would require Defendants to incur significant costs in order to change its packaging procedures. The retrofit would entail revisions to the packaging procedures

nationwide, and in all facilities. To do so would entail expenses well in excess of $75,000.00." (*Id.* ¶ 5.)

On April 7, 2015, plaintiff moved to remand this case back to D.C. Superior Court. (*See* Mem. of P. & A. in Supp. of Pl.'s Mot. to Remand for Lack of Subject Matter Jurisdiction [ECF No. 14] ("Pl.'s Mem.").)

## ANALYSIS

### I. STANDARD OF REVIEW

A civil action filed in state court may only be removed to a United States district court if the case could originally have been brought in federal court. 28 U.S.C. § 1441(a). Upon a motion to remand a removed case to state court, the party opposing the motion "bears the burden of establishing that subject matter jurisdiction exists in federal court." *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 69 (D.D.C. 2014) (quoting *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the W.*, 366 F. Supp. 2d 33, 36 (D.D.C. 2005)). Courts are to construe the removal statute narrowly in order to avoid federalism concerns, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941), and any doubts about the existence of subject matter jurisdiction are to be resolved in favor of remand. *Hood v. F. Hoffman-La Roche, Ltd.*, 639 F. Supp. 2d 25, 28 (D.D.C. 2009) (citing *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007)).

### II. WAIVER

Defendants argue that plaintiff has waived his right to move for remand by engaging in discovery. (Defs.' Mem. of P. & A. in Opp. to Pl.'s Mot. to Remand for Lack of Subject Matter Jurisdiction [ECF No. 16] ("Defs.' Opp.") at 14.) Defendants explain that "Plaintiff has

propounded and has granted Defendants an extension to April 23, 2015 to respond to broad written discovery addressing liability and damages." (*Id.*)

To be sure, "[a] plaintiff might waive the right to a remand on the basis of procedural defects by supplementing a complaint, litigating a summary judgment motion, or proceeding in a trial." *Busby v. Capital One, N.A.*, 841 F. Supp. 2d 49, 53 (D.D.C. 2012). However, "merely engaging in offensive or defensive litigation (such as limited discovery) especially when the plaintiff has already filed a motion for remand, does not forfeit the right to a remand." *Id.* In *Busby*, the Court found that "plaintiff ha[d] waived . . . her objection to the procedural defects in the defendants' notice of removal" where "plaintiff ha[d] litigated her claim . . . for well over a year," including filing several motions and pursuing an appeal. *Id.* at 53-54 (emphasis omitted). Plaintiff in this case has, at most, exchanged some discovery with defendants, although the extent of the exchange is unclear. (*See* Defs.' Opp., Ex. C [ECF No. 16-3].) This limited engagement falls far short of the activity that gave rise to waiver in *Busby*. Moreover, as plaintiff correctly points out, his "motion to remand is not based upon a mere procedural defect, but that as a matter of law the Court lacks subject matter jurisdiction to hear the claim." (Pl.'s Reply in Further Supp. of Pl.'s Mot. to Remand for Lack of Subject Matter Jurisdiction [ECF No. 18] ("Pl.'s Reply") at 11.) Objections based on subject matter jurisdiction cannot be forfeited. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). For these reasons, the Court finds that plaintiff's motion to remand has not been waived.

## III.    DIVERSITY JURISDICTION

A federal court has diversity jurisdiction when (1) there is complete diversity of citizenship among the parties (that is, no plaintiff is a citizen of the same state as any defendant) and (2) the "amount in controversy" is greater than $75,000. *See* 28 U.S.C. § 1332(a). There is

no dispute that there is complete diversity of citizenship among the parties. (*See* Compl. ¶¶ 4-6.) In their notice of removal, defendants identify two reasons why the amount in controversy exceeds $75,000. First, they contend that plaintiff "alleged an undefined number of violations, which could, unto themselves exceed the sum of $75,000." (Notice ¶ 10.) Second, they argue that "the value of the injunctive relief sought by Plaintiff would cost the Defendants more than $75,000." (*Id.*) Defendants, however, make no mention of their first rationale in their opposition brief. The Court thus considers that argument waived[1] and will instead focus on defendants' contention that "[t]his Court should deny Plaintiff's Motion to Remand . . . because the cost to Defendants of complying with the injunctive relief sought in this action exceeds $75,000.00." (Defs.' Opp. at 1.)

Plaintiff's first argument is that "the potential cost of the injunctive relief should not be viewed from the defendant's point of view, but rather from the perspective of the plaintiff." (Pl.'s Mem. at 8.) Although mentioned by neither party, there is a deep circuit split on this issue. "The majority of federal courts have chosen to use the plaintiff viewpoint rule." 15 *Moore's Federal Practice* § 102.109 (Matthew Bender 3d ed.) (citing cases from the Second, Third, Eighth, and Eleventh Circuits). Under this approach, "[t]he test of the jurisdictional amount is the value of the plaintiff's right that is to be protected, and not the extent of the monetary loss or damage that has been suffered or is threatened by the invasion." *Id.* Several other circuits "ha[ve] adopted the 'either viewpoint' approach." *Id.* (citing cases from the Seventh, Tenth,

---

[1] The Court would reject defendants' argument in any case. Plaintiff only alleges that he "purchased two items containing non-functional slack-fill." (Pl.'s Mem. at 7; *see also* Compl. ¶ 20.) The DCCPPA only entitles him to three times his actual damages or $1,500 per violation, whichever is greater. D.C. Code § 28-3905(k)(2)(A). The fact that other consumers may have purchased the same products is irrelevant since "defendant[s] cannot aggregate the claims of the individual customers in order to establish . . . the requisite amount in controversy." *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 32 (D.D.C. 2014).

Fourth, and D.C. Circuits). Courts that follow this view "may look either to the value of the right that the plaintiff seeks to enforce or to protect, or to the cost to the defendants to remedy the alleged denial of that right." *Id.*

The D.C. Circuit appears to have adopted the "either-viewpoint" rule. In *Tatum v. Laird*, 444 F.2d 947 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972), the Circuit noted the split of authorities and stated that "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *Id.* at 951 n.6 (quoting *Ronzio v. Denver & R. G. W. R. Co.*, 116 F.2d 604, 606 (10th Cir. 1940)). The *Tatum* Court remanded because "the cost to the [defendant] of complying with [an injunction] might well exceed $10,000." *Id.* at 951. The Circuit has twice followed *Tatum*. *See Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir 1978) ("In assessing whether a complaint satisfies that standard, a court may look either to the value of the right that plaintiff seeks to enforce or to protect or to the cost to the defendants to remedy the alleged denial." (internal quotation marks and footnote omitted)); *Comm. for GI Rights v. Callaway*, 518 F.2d 466, 472 (D.C. Cir 1975) ("[T]he amount in controversy may be measured either by the 'value of the right sought to be gained by the plaintiff or the cost of enforcing that right to the defendant.'" (quoting *Tatum*, 444 F.2d at 951)). Plaintiff cites no Circuit precedent reversing *Tatum* and its progeny.[2] Instead, he cites several D.C. district court cases that have refused to consider the cost of an injunction from the defendant's viewpoint. (Pl.'s Mem. at 8-9). These cases, however, identify no D.C. Circuit

---

[2] The D.C. Circuit did question the *Tatum* rule in *Fenster v. Schneider*, 636 F.2d 765, 767 n.1 (D.C. Cir. 1980), noting that the Ninth Circuit had recently held that the "cost-to-defendant rule" "was an impermissible way of circumventing" the Supreme Court's non-aggregation cases – *Snyder v. Harris*, 394 U.S. 332 (1969), and *Zahn v. International Paper Co.*, 414 U.S. 291 (1973). However, the *Fenster* Court held that it did not need to "resolve any possible conflict . . . at this time," since the plaintiff had jurisdiction under a different statute. 636 F.2d at 767 n.1.

or Supreme Court precedent overturning *Tatum*;[3] indeed, the majority of recent district court cases in this jurisdiction adhere to the either-viewpoint rule.[4] This Court must follow Circuit precedent and consider the cost of the injunction to defendant.

Plaintiff next argues that, even if this Court considers defendants' compliance costs, the relevant amount in controversy is not defendants' total costs but rather the "portions of the injunctive relief that run to the individual Plaintiff." (Pl.'s Mem. at 9 (internal quotation marks omitted).) As a practical matter, plaintiff argues that defendants should have "identif[ied] a sum certain cost of injunctive relief . . . and divide[d] that sum certain by the amount of consumers in the District of Columbia that [would] benefit from the relief." (*Id.*) Failing to do so "render[ed] the basis for removal speculative." (*Id.*)

The D.C. Circuit has not ruled on the proper method for calculating a defendant's injunction costs in representative suits such as this one. (*See* Compl. ¶ 43 ("[Plaintiff] seeks the following damages for himself *and on behalf of the general public*: An injunction against [defendants] . . . ." (emphasis added)).) One district court, however, did consider the issue in the context of a DCCPPA suit, brought on behalf of "each individual District of Columbia

---

[3] *See Nat'l Consumers League v. General Mills, Inc.*, 680 F. Supp. 2d 132, 140 (D.D.C. 2010); *Breakman v. AOL, LLC*, 545 F. Supp. 2d 96, 105 (D.D.C. 2008); *Nat'l Org. for Women v. Mut. of Omaha Ins. Co.*, 612 F. Supp. 100, 107-08 (D.D.C. 1985). These three cases all make a similar argument: that "viewing the jurisdictional amount issue from the defendant's point of view is simply another way of aggregating claims which is what the Supreme Court disallowed in *Snyder*." *Nat'l Organization for Women*, 612 F. Supp. at 108. This argument is problematic, however, since *Snyder* was decided in 1969 (and the related case, *Zahn*, in 1973), but the D.C. Circuit affirmed the either-viewpoint rule in 1975 and 1978 in *Callaway* and *Smith*, respectively. Regardless, as is discussed *infra*, the aggregation concern expressed in these district court cases is allayed by limiting defendants' costs to those that run to each individual plaintiff.

[4] *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 74 (D.D.C. 2014); *Geo Specialty Chems., Inc. v. Husisian*, 951 F. Supp. 2d 32, 39-40 (D.D.C. 2013); *Lurie v. Mid-Atl. Permanente Med. Grp., P.C.*, 729 F. Supp. 2d 304, 332 (D.D.C. 2010); *Wexler v. United Air Lines*, 496 F. Supp. 2d 150, 153 (D.D.C. 2007).

consumer," seeking both damages and injunctive relief related to AOL's pricing policy. *Breakman*, 545 F. Supp. 2d at 100. AOL calculated that "its time and resources [for complying with the injunction] would total $ 255,800" and estimated that plaintiff's "complaint [would] reach 28,451 consumers in the District of Columbia." *Id.* at 100, 106. The Court held that "when a court looks to the compliance costs of a defendant to determine the amount in controversy in an action where separate and [distinct] claims are presented on behalf of multiple parties, 'the cost running to each plaintiff must meet the amount in controversy requirement.'" *Id.* at 106 (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 898 (10th Cir. 2006)). Since "the cost running to each District of Columbia consumer [was] $ 8.99," the Court remanded the suit. *Id.*

This Court is persuaded by *Breakman*. As Judge Posner explained in *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997), "[w]hatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint." As such, the relevant calculation is "the cost to each defendant of an injunction running in favor of one plaintiff." *Id.*; *see also McCauley v. Ford Motor Co.*, 264 F.3d 952, 960-61 (9th Cir. 2001) (holding that "the amount in controversy requirement cannot be satisfied by showing that the fixed administrative costs of compliance exceed $ 75,000" because to hold otherwise would be "fundamentally violative of the principle underlying the jurisdictional amount requirement – to keep small diversity suits out of federal court"). Defendants' argument – that this Court should consider their total compliance costs in calculating the amount in controversy – would circumvent the non-aggregation principle articulated in *Snyder* and *Zahn*. *See Zahn*, 414 U.S. at 294 ("When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is

essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." (quoting *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40-41 (1911))).  Defendants do not dispute that plaintiff and the members of the public he represents have separate and distinct claims for relief against defendants.  *See Flowers Bakeries*, 36 F. Supp. 3d at 32 ("[C]ourts within this district have unanimously concluded that so long as individual consumers are eligible to recover individual damages, the consumers do not have a 'common and undivided interest' that may be aggregated under the non-aggregation principal announced in *Snyder*.").  Thus, for defendants to carry their burden to establish the amount in controversy, they must show that the costs of the injunction that run to each plaintiff individually exceed the jurisdictional amount.  They have not attempted to do so.  The Court, therefore, cannot exercise jurisdiction over this case.[5]

## CONCLUSION

For the foregoing reasons, the Court will grant plaintiff's motion to remand [ECF No. 14].  A separate Order accompanies this Memorandum Opinion.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:  May 13, 2015

---

[5] Plaintiff argues in the alternative that the Macken Affidavit is insufficiently detailed for this Court to find that defendants' total costs would exceed $75,000.  (Pl.'s Mem. at 10-11.)  In light of today's holding, the Court need not reach this argument.